DOMINIQUE CHARPENTIER

*vs.*

THE GREAT ATLANTIC & PACIFIC TEA COMPANY.

Androscoggin.     Opinion November 16, 1931.

*Bermans*, for plaintiff.
*Carl F. Getchell*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.    Action to recover for personal injuries due to alleged negligence of defendant.

On general motion after a verdict for plaintiff in the sum of $2,791.00.

Inasmuch as it was agreed that the defendant Company was a non-assenting employer under the Workmen's Compensation Act, it could not avail itself of possible defenses arising from the fellow servant doctrine, assumption of risk or contributory negligence and such defenses require no discussion, the only question involved being whether or not there was negligence on the part of the defendant Company.

The plaintiff was employed by the defendant as an assistant clerk in one of its stores located at the corner of Lisbon and Chandler Streets in Lewiston, Maine.

On one side of the store towards the rear was a meat cooler and on the other side a vegetable cooler, with a passageway between about four feet wide leading to a room in the rear used for storage purposes. Just before the store closed Saturday night, May 11, 1929, the plaintiff, as a part of his work, was carrying a fifty pound box of onions from the outside front of the store and fell in the passageway referred to above, suffering the injuries for which recovery was sought.

The plaintiff, when asked to tell what happened, testified, "Well, we had closed up and we had had some outside displays, potatoes and vegetables and lettuce and all stuff like that; and I was to take them in and put them in back so that the front place would be clean

for Sunday. And I was carrying this box of onions, and as I went out there, there was some of them leaves on the floor, and I stepped on one of them; and as I went I wanted to guarantee myself and as I fell I dropped the crate of onions and the same time pushed my leg toward the meat cooler and they both hit near the knee. Together. My weight going down on top of it." Interrogated as to whether he saw the leaf on which he claimed to have slipped, plaintiff replied, "I couldn't very well see it. I had this crate of onions in front of me, and if you hold something in front of you you can't really see where you put your foot down." When asked what was the condition of the floor at the time he fell, plaintiff replied, "The floor? When I fell, was all upset, residue of all kinds of things on the floor, and around in there where the display was, serving customers and don't bother really to take up the things that fall on the floor; and it was closing time and we don't sweep until the last thing." The plaintiff testified that on this Saturday, prior to the time of his injury, vegetable products consisting of lettuce, cabbage, cauliflower, carrots and beets had been unpacked in the passageway by Mr. Desjardins, the manager. Plaintiff also testified that he had swept up at the noon hour as a part of his duty, but that he had no opportunity to sweep up again at any later time up to the closing hour, but there is no evidence that after this noon sweeping there was any further unpacking of vegetable or other products, and there is undisputed testimony of Mr. Cote, manager of the meat department, that the unpacking was finished by nine or ten o'clock in the forenoon.

The plaintiff testified that Mr. Desjardins saw him fall and asked him if he hurt himself and talked with him while he was on the floor and plaintiff said, "I didn't think I hurt myself much." The record discloses no statement by plaintiff to Mr. Desjardins that he slipped on a leaf or any refuse in the passageway or that the alleged slipping was in any way due to conditions there. The plaintiff testified that he went home after the store closed and that he returned Monday morning and told Mr. Desjardins "that that fall I had Saturday night was pretty bad and that my leg was paining me quite a lot," and that he worked four days at light work of weighing and that he then gave up his job. There was

no evidence that at any time before leaving, or afterwards, up to the time suit was brought he made any talk or claim about his fall being caused by the presence of any leaf or by any other condition of the floor in the passageway.

There was no evidence as to the length of time the leaf or substance on which he claimed to have slipped was on the floor, whether all day or only a few moments or how long it was there. There is nothing to show any knowledge on the part of the defendant Company, or any of its employees, as to any condition which might have required their attention as a part of due care. As far as any evidence in the case is concerned, the leaves or leaf on which the plaintiff asserts he "stepped," and presumably on which he claims that he slipped, may have been dropped there only a few moments or immediately before he started to go through the passageway where the accident occurred. Even if the general condition of the floor were as described by the plaintiff, it could not be claimed that such general condition was the proximate cause of the accident. The plaintiff has definitely said that his fall was occasioned by stepping on one of the leaves on the floor, and in our opinion he has failed to show negligence on the part of the defendant Company in that respect as well as to the general condition of the floor.

In cases cited by counsel in which it was held that the jury's verdict for the plaintiff should be sustained, the facts and circumstances disclosed were such that there might well have been two views as to liability and in those cases it could not be said that the jury was manifestly wrong. The presence of other facts and circumstances which might possibly have been brought out, but which were not disclosed by the evidence, might have led to a different conclusion from that expressed in this opinion, but we are bound by the record as it has come to us.

The master is liable for the consequences of his negligence, if negligence is found, but he is not an insurer of the employee's safety. *Mosely* v. *Raines*, 37 S. W. (2d) 78 (Ark.) ; *Hall* v. *Proctor Coal Co.*, 236 Ky., 813, 34 S. W. (2d) 425.

In testing the correctness of the verdict, and giving the evidence its strongest probative force in favor of the plaintiff, we are unable to find that the defendant Company was negligent under the rule

laid down in the Maine cases, which is well settled that it is the duty of the master to use reasonable care to furnish for his servant a reasonably safe place for him to do his work. *Elliott* v. *Sawyer*, 107 Me., 195, 201; *Sheaff* v. *Huff*, 119 Me., 469; *Morey* v. *Maine Central Railroad Co.*, 125 Me., 272, 275, 127 Me., 190, 193; *Loring* v. *Maine Central Railroad Co.*, 129 Me., 369, 373.

In 125 Me., at page 275, *supra*, the Court said, "A primary duty of a railroad company is to use due care in providing a reasonably safe place and reasonably safe appliances for the use of its employees. It does not undertake to provide a reasonably safe place and reasonably safe appliances, but it does undertake to use due care to do so, and that is the measure of its duty." Citing *Sheaff* v. *Huff*, supra, in which the Court said, "It accordingly appears that the definition of the duty of an employer in furnishing a place for his workmen is in no sense technical, but one which carefully differentiates between making the employer an insurer of the reasonable safety of the place, and an observer of the universal rule of reasonable care to furnish such a place."

Not only can the defendant Company not be held as an insurer, but it can not be held responsible for failure to use extraordinary care, and in the case before us we feel that to sustain the verdict would be equivalent to placing such a burden upon it.

Recognizing the rule that a jury verdict should not be disturbed if the facts are such that reasonable men might differ as to their conclusions, we feel that in the instant case the jury was not warranted on the evidence in finding that the defendant did not use reasonable care to furnish a reasonably safe place in which the plaintiff was to do his work.

The entry must be,

*Motion sustained.*